194 A.2d 662 (1963)
Madeleine Poli LE BERT-FRANCIS, Appellant,
v.
Brian LE BERT-FRANCIS, Appellee.
No. 3239.
District of Columbia Court of Appeals.
Argued September 9, 1963.
Decided November 4, 1963.
Rehearing Denied December 3, 1963.
Robert H. Reiter, Washington, D. C., for appellant.
James T. Barbour, Jr., Washington, D. C., for appellee.
Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.
HOOD, Chief Judge.
This action was brought by the husband for a divorce on the ground of five years voluntary separation. In his complaint he alleged that the property rights of the parties and the right of the wife to maintenance and support had been settled by a separation agreement. In her answer the wife sought maintenance or alimony, and *663 upon motion was granted temporary maintenance. On appeal we reversed because of the trial court's ruling that no legal effect could be given to a separation agreement. In reversing we ruled:
"In the absence of fraud, duress or concealment, a husband and wife may enter into a valid separation agreement; and such agreement, fairly and voluntarily made, if intended as a complete and final settlement of all property rights and claims between the parties, is binding and is a bar to any further claim by the wife."[1]
After our reversal the case was heard on its merits before another trial judge, who found that the husband was entitled to a divorce and that the separation agreement was valid and binding and was a bar to the wife's claim to alimony. She has appealed from the entire order, but her argument is directed in large measure to that portion of the judgment which denied her alimony.
Her chief contention is that the burden was on the husband to affirmatively prove that the separation agreement was made after full disclosure, that it was fair in its terms and free from any taint of overreaching, and that the trial court was in error in failing to impose this burden on the husband.
Essentially the wife's argument is that every separation agreement in which the wife, for the consideration expressed in the agreement, releases the husband from all other obligations for support, is presumptively fraudulent. Some of the older cases lend support to this contention. They appear to be based on the early common law conception that a wife was so completely under the dominance of her husband that it was impossible for her to freely and voluntarily contract with him. More recent cases hold that there is no presumption that separation agreements are fraudulent,[2] and that one who asserts the invalidity of such agreement has the burden of proving that it is tainted by fraud, duress or overreaching.[3]
Some of the earlier cases regard a separation agreement as presumptively fraudulent because of a supposed fiduciary or confidential relation existing between the parties, but even before the turn of the century Judge Sanborn speaking for the Eighth Circuit, used these oft-quoted words:
"The result is that the fact that the parties to the agreement of separation occupied the confidential relation of husband and wife did not render it presumptively void, and did not cast upon the appellees the burden of pleading or proving that it was just and fair to the appellant."[4]
The modern trend holds that when a husband and wife have separated or are about to separate and seek by agreement to settle their respective rights and obligations they deal at arm's length.[5] We need not go that far but we do rule that when husband and wife have separated and are negotiating a separation agreement the previously existing confidential relationship has been so impaired that it cannot of itself raise a presumption that any agreement reached will be invalid.
We hold that separation agreements are not per se presumptively fraudulent or invalid and that one who attacks the validity of such an agreement has the burden *664 of proving its invalidity. In this day and time we see no valid reason why when a husband and wife realize their marriage has come to an end and determine to go their separate ways, they may not competently enter into a binding agreement settling all questions between them as to property rights and support. In such a situation they should be encouraged to make such an agreement for in most instances they are in a better position to determine what is fair and reasonable than is a court. So often we are faced with a long record of a bitter contest over the single question of how much money the husband should pay the wife, with one party complaining here that the award was too great or too small. By the exercise of a little restraint and reasonableness such litigation could be avoided. We repeat that separation agreements should be encouraged and when made should be enforced. Such an agreement is made to avoid litigation and should not be used as a springboard for litigation. In some instances, of course, a party may enter into an agreement which in retrospect seems foolish or ill-advised, but the same is often said of the marriage itself.
Turning again to the burden of proof, we recognize there may be instances where a separation agreement on its face may appear so unfair and unreasonable as to raise a presumption of invalidity. In such a case the burden will be on the one relying upon the agreement to rebut this presumption. We approve the rule "that where the agreement is fair on its face, it will be deemed presumptively valid, the presumption being rebuttable; and that where the agreement is unfair on its face, equity will raise a presumptiononce more rebuttableof invalidity."[6]
Turning now to the particular facts of this case, it cannot be said that the agreement was patently unfair on its face. It recited that differences had arisen between the parties, that they had separated and were living apart and intended to continue to live apart, and that the agreement was made "in settlement, adjustment and compromise of all property rights and questions of mutual promises and covenants." The husband agreed to pay the wife $225 at time of execution of agreement, $125 per month for the next three months, and $75 per month for the next thirty-six months "as alimony, support and maintenance." He also agreed to pay $200 to cover cost of travel of the wife back to her home in France, and to pay attorneys' fees and costs of any divorce action. Each party agreed that the other should have complete control of his or her property and they waived dower, curtesy and other property rights. The agreement, although short in length, and perhaps not a model in form, appears to be an ordinary separation agreement and on its face discloses no unfairness or overreaching. We hold that the trial court properly placed on the wife the burden of proving the invalidity of the agreement.
Her testimony showed that the parties were married in Germany in 1947 and lived there until 1954 when they separated and he returned to this country. The wife, who had been injured in an automobile accident, remained in Germany until 1955 and then came to this country, but the parties never lived together here. A single attempt by her at reconciliation proved unsuccessful. In 1956, following an operation, the wife brought suit for divorce in Arlington, Virginia. Negotiations for a separation agreement followed and the agreement in question, prepared by the wife's counsel, was executed. The husband fully performed the obligations imposed upon him by the agreement. It would seem the parties contemplated that she would proceed with her divorce action in Virginia and then go to live in France. Instead she dismissed the divorce proceeding, went to France but then returned to this country.
*665 The wife's claim of duress or coercion apparently rests on the fact that at the time of signing the agreement she was sick and without funds. However, she had counsel who filed the divorce action, negotiated with the husband's counsel, and eventually prepared the separation agreement. She made no attempt to repudiate the agreement until after she had collected all payments due her under it. We cannot hold that the trial court was in error in finding that the agreement was fairly and voluntarily made and intended as a complete and final settlement of all claims between the parties, including the wife's claim to maintenance.
Affirmed.
NOTES
[1] Le Bert-Francis v. Le Bert-Francis, D.C.Mun.App., 175 A.2d 602, 603, 604.
[2] Matthews v. Matthews, 24 Tenn.App. 580, 148 S.W.2d 3; In re Bubb's Estate, 53 Wash.2d 131, 331 P.2d 859; Rinehart v. Rinehart, 52 Wyo. 363, 75 P.2d 390.
[3] Kearley v. Hunter, 154 Fla. 81, 16 So. 2d 728, 152 A.L.R. 185; Hughes v. Leonard, 66 Colo. 500, 181 P. 200, 5 A.L.R. 817; Hoch v. Hoch, 187 Kan. 730, 359 P.2d 839.
[4] Daniels v. Benedict, 97 F. 367, 372 (8 Cir. 1899).
[5] Blair v. Blair, 140 Mont. 278, 370 P.2d 873; Collins v. Collins, 48 Cal.2d 325, 309 P.2d 420.
[6] Lindey, Separation Agreements and Antenuptial Contracts, § 15-81.