No. 44,016

In the Matter of the Estate of Milton I. Cooper, Deceased. (DELLA COOPER, *Appellant,* v. ERWIN D. COOPER, and C. L. MORGAN, Administrator, *Appellees.*)

(403 P. 2d 984)

Opinion filed July 10, 1965.

*L. F. Cushenberry,* of Oberlin, argued the cause, and *Elmo Lund,* of Oberlin, was with him on the briefs for appellant.

*Kenneth Clark,* of Hill City, argued the cause, and *W. H. Clark* and *Marion W. Chipman* both of Hill City, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This appeal involves the question whether Della Cooper, widow of Milton I. Cooper who died intestate on March

21, 1963, waived her right to inherit any part of his estate by reason of a postnuptial property settlement agreement.

Della and Milton were married at Hoxie, Kansas, on December 17, 1953. Each had previously been married and divorced, and each had one son by the previous marriage. Erwin D. Cooper is Milton's only child and resides at Mattoon, Illinois; Dave Potter is Della's only child and resides at Friend, Nebraska; both are adults. No children were born to Milton and Della.

Following Milton's death, a petition for administration of his estate was signed by the appellant, Della Cooper, and the appellee, Erwin D. Cooper, and sworn to by both parties, alleging that they were "the sole and only heirs at law of the decedent, and as such have an interest in said estate." Later, Della filed a petition in the probate court asking that a widow's allowance of $750.00 and an automobile be set aside to her. Erwin filed a petition in the probate court setting out the postnuptial agreement hereafter referred to, and asked that all the assets of the estate be assigned to him. He also filed an answer to Della's petition for a widow's allowance and asked that her petition be denied. Both petitions were transferred to the district court (K. S. A. 59-2402b) where additional pleadings were filed and the parties entered into a stipulation of fact. Following a trial to the court, judgment was entered that the postnuptial agreement was a valid agreement and that Della was barred from inheriting any property of the decedent's estate by reason thereof.

The material facts are summarized: Mr. Alex Fromme, an attorney at Hoxie, Kansas, was the scrivener of the postnuptial agreement in question. Mr. Fromme had known both the decedent and Della for at least twenty years. The decedent was previously married to Nelle L. Cooper, which marriage ended in divorce on February 24, 1947, and Della was divorced from her previous husband, Clarence D. Potter, on May 20, 1946. As previously indicated, the decedent and Della were married December 17, 1953. The evidence showed that the relationship between the decedent and Della during the early part of their marriage was "pretty stormy." Both parties had serious drinking problems which caused bad quarrels and then separations would occur. The parties were separated three or four times a year between 1953 and 1958. They lived in a house in Hoxie which belonged to Della, but the decedent kept a bed, refrigerator, cook stove and other furniture in a small house on his farm northeast of Hoxie where, during their separations, he

would sometimes go, and at other times he would go to a rooming house in Hoxie.

During one of the separations in the latter part of May or the first part of June, 1956, the decedent went to Mr. Fromme's office and stated that he was interested in having some type of separation agreement prepared. Fromme prepared such an agreement and the decedent took a copy to Della and her attorney for their study. Fromme identified plaintiff's Exhibit A, the pertinent portions of which are hereafter quoted and summarized, as the agreement he prepared for the decedent. On June 7, 1956, the decedent, together with Della, returned to Fromme's office with the agreement unsigned and the paragraph containing the language, "It is further agreed that in case of divorce each party is to pay his or her own attorney fee," was stricken out. At the direction of both parties, Fromme prepared an additional page, hereafter quoted, which was identified by him as defendant's Exhibit 1. Both documents, Exhibit A and Exhibit 1, were then executed by the decedent and Della. One set of the documents was given to Della and the decedent directed that his set be retained by Fromme in his office.

Plaintiff's Exhibit A is quoted and summarized:

"This agreement entered into this 7th day of June, 1956, by and between Milton I. Cooper and Della Cooper of Hoxie, Sheridan County, Kansas, husband and wife, witnesseth:

"The parties hereto fully realizing that they are incompatible and cannot live together as husband and wife and have any peace of mind, and that such incompatibility, the state of their minds and conditions of their health make it inevitable that a separation must necessarily take place between them, they hereby agree to separate and further agree as to their property rights, real and personal owned jointly or severally, by them or either of them, as follows . . ."

The agreement allotted to Della her home in Hoxie, household goods, furniture and fixtures; her business located in the city of Hoxie known as Della's Cafe including inventory, furniture, fixtures and supplies; a 1955 Chevrolet automobile; the bank account kept in her name, and the TV tower and air conditioner located in her home in Hoxie.

Milton was allotted his 320-acre farm; all farm machinery and implements; a 1953 Ford automobile; all crops growing on his land and upon real estate which he rented; the bank account standing in his name; all feed, grain and seed on hand; such personal items as clothing, fishing equipment and so forth, and the household goods

and furnishings located in the farm home. The agreement then provided:

"Each party hereto agrees never to set up any claim to any of the property hereto allotted to the other or any after acquired property either in life or by way of inheritance.

"Each agrees that the other may hold, use, incumber, alienate, grant, bargain and sell as his or her separate property, to the same extent as though the parties hereto were never married to each other and that, upon any gift, conveyance, or incumbrance of any property by either, the other will join in a proper instrument of writing necessary to the release of all claims therein, and in default of signing such writing this agreement shall operate as written consent thereto and as a waiver of any and all rights therein or thereto.

"In consideration of the covenants herein contained it is agreed that each party shall be solely responsible for any indebtedness upon the respective property allotted to each.

"The said Della Cooper, wife of said Milton I. Cooper, in consideration of the foregoing provisions releases her husband from all obligation to support her, and, in case of divorce, from all obligation to pay her alimony.

"This agreement is tended as a fair, full and complete settlement of all rights in property now owned by the parties hereto or either of them."

Defendant's Exhibit 1 reads as follows:

"AGREEMENT AS TO ATTORNEY'S FEES AND COSTS

"It is understood and agreed by and between Milton I. Cooper and Della Cooper, husband and wife, of Hoxie, Kansas, that as soon as the separate agreement dated this same date which covers division of property and rights of the parties on separation is signed and executed that a divorce action shall be filed and prosecuted by Milton I. Cooper to obtain the divorce and obtain approval by the court of the property agreement made in the separation agreement made this date, and that said action shall be prosecuted without contest by default; and that the total expense of the costs and attorney fees shall be paid by the said Milton I. Cooper."

After the postnuptial agreement was signed, the decedent and Della solved their drinking problems and resumed living together. The record discloses they enjoyed a normal, happy married life together. On two occasions Fromme asked the decedent what to do with the agreement and the decedent directed him to keep it in his office. Fromme testified that he put the agreement in "his inactive files" where it remained until this controversy arose.

With respect to the execution of plaintiff's Exhibit A and defendant's Exhibit 1, Fromme testified:

"Q. Were they a part of the same agreement?
"A. The two of them together make the whole agreement, signed at the same time and referring to the same subject matter."

Fromme further testified that after the agreement was executed, Milton did not come back and ask him to file a divorce proceeding

or to file a separate maintenance proceeding against Della; that the Coopers were legal residents of Sheridan County and that he knew Milton had never filed any action for divorce or separate maintenance or sought approval of the property settlement; that defendant's Exhibit 1 provided that a divorce action should be filed and prosecuted and that subject was discussed before the agreement was prepared and executed, and that it was agreed a separation between the parties was inevitable and that the parties were separated at that time.

In rendering judgment sustaining the validity of the postnuptial agreement, the district court filed a memorandum opinion stating that at the time the agreement was executed, the parties were living separately and both were represented by competent counsel, and that:

"As a part of this agreement provision was made on a separate piece of paper regarding the attorney fees and costs of a divorce action. This separate agreement would be void, or if it is not a separate agreement, but part of the total agreement, this portion of the contract would be void, but has no effect on the balance of the contract.

"This Court finds that the contract entered into between these parties on the 7th of June, 1956, is valid and legal and binding, that the resumption of living together as man and wife would not void this contract. The agreement as to the institution of action for divorce and payment of attorney fees does not void the contract."

The appellant principally contends the postnuptial agreement was void as against public policy because it required that a divorce action "shall be filed and prosecuted . . . without contest by default," and if not invalid, it was ineffective and not binding on the parties until presented to the district court for approval and approved.

Are plaintiff's Exhibit A and defendant's Exhibit 1 separate agreements, to be considered and construed as separate documents, or are they to be read and construed together as one instrument? It is well settled in this jurisdiction that where two or more instruments are executed by the same parties contemporaneously or even at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed together so far as determining respective rights and interests of the parties, although they do not in terms refer to each other. (*MacLorinan v. Finley,* 124 Kan. 637, 640, 261 Pac. 587; *Skinner v. Skinner,* 126 Kan. 601, 270 Pac. 594; *Steele v. Nelson,* 139 Kan. 559, 32 P. 2d 253; *Setchell v. Reed,* 153 Kan. 818, 820, 113. P. 2d 1050;

*Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 134, 368 P. 2d 19; 17A C. J. S. Contracts, § 298, p. 714.) It is evident under the foregoing rule that plaintiff's Exhibit A and defendant's Exhibit 1 must be read and construed together; they were not only executed at the same time and by the same parties, but concern the same subject matter, that is, the division of the property of the parties and a severance of their marital relationship. Moreover, Exhibit 1 specifically refers to that part of the agreement with respect to the division of property and the rights of the parties therein when the marriage relationship was terminated by divorce.

We think the district court erred in its conclusion that defendant's Exhibit 1 was a separate agreement, or if it was not a separate agreement but a part of the total agreement, it had no effect on the balance of the contract. The postnuptial contract under consideration is indivisible; it is wholly good or wholly bad.

This court has had occasion to pass upon contracts between spouses entered into prior to or after marriage vows. Generally speaking, a contract incident to divorce is to be distinguished, as to its validity, from one promotive of divorce. Contracts between spouses made in good faith, free from fraud, which are just and equitable in their provisions, are not invalid merely because made in contemplation of divorce, or pending divorce proceedings, where not directly conducive to divorce, especially where subsequently approved by the court in its decree granting a divorce. (Nelson, Divorce and Annulment, Vol. 1, § 13.23, p. 505.) In the case of *In re Estate of Cantrell,* 154 Kan. 546, 119 P. 2d 483, it was said:

"The general rule in this state is that contracts, made either before or after marriage, the purpose of which is to fix property rights between a husband and wife, are to be liberally interpreted to carry out the intentions of the makers, and to uphold such contracts where they are fairly and understandingly made, are just and equitable in their provisions and are not obtained by fraud or overreaching. (See *Dunsworth v. Dunsworth,* 148 Kan. 347, 352, 81 P. 2d 9, and cases cited.) Generally speaking, such contracts are not against public policy, although a different rule obtains where the terms of the contract encourage a separation of the parties. . . ." (l. c. 551, 552.)

It is well settled and beyond controversy that a contract between spouses which facilitates or promotes their divorce is invalid and is unenforceable as contrary to public policy. (Nelson, op. cit., *supra,* § 13.22, p. 504.) This court is numbered among the authorities which are committed to this general rule. (*Neddo v. Neddo,* 56 Kan. 507, 44 Pac. 1; *King v. Mollohan,* 61 Kan. 683, 688, 60 Pac. 731; *Fincham v. Fincham,* 160 Kan. 683, 165 P. 2d 209.) See, also, 17

Am. Jur., Divorce and Separation, §§ 13, 14 and 15, and Restatement of the Law, Contracts, § 584, Comment 2.

The difficulty which arises in connection with the application of the foregoing rule is when such an agreement can be said to invite, facilitate, or encourage divorce. It is generally held that an agreement between husband and wife, under which there is an obligation to sue for or procure a divorce, is void as contrary to public policy. (Nelson, op. cit., *supra*, § 13.24, pp. 505, 506.) Likewise, it is generally held that contracts between spouses which obligates one spouse to not defend or contest a divorce suit by the other spouse as a part of a support or property agreement, is invalid as contrary to public policy. (Nelson, op. cit., *supra*, § 13.26, p. 507; *Rapp v. Cansdale*, 214 N. Y. S. 2d 522; *Gardine v. Cottey*, 360 Mo. 681, 230 S. W. 2d 731; *Perry v. Perry*, 183 Tenn. 362, 192 S. W. 2d 830.)

The appellee cites and relies upon *King v. Mollohan*, supra, and *Kistler v. Heartburg*, 81 Kan. 191, 105 Pac. 1117, to sustain the postnuptial agreement, and asserts it is immaterial whether the agreement is considered as two documents or as one. The opinion in Kistler conceded that if a postnuptial agreement provided that one spouse would not contest a divorce action if a divorce suit followed the agreement, it was void. And in the King case, the court found that public policy forbids an agreement to obtain a default divorce. However, in the King case, it was concluded that the husband who had received the benefits of a contract fully executed and carried out, would hardly be in a position to attack it and that those claiming under him occupied no better position. The Kistler case followed the reasoning in the King case.

The agreement before us specifically provided that when it was signed and executed, Milton would file and prosecute an action for divorce and obtain approval by the court of the property agreement therein, and, further, that the action would be prosecuted without contest by Della and that a decree of divorce would be entered by default. It is doubtful if a postnuptial agreement could be more specifically drawn to invite, facilitate or encourage divorce than the one before us, which imposed an obligation to sue and procure a divorce, and, further, to obtain the decree by a bargain that there would be no contest or defense on the part of the other spouse. Such an agreement is void on the ground that it is collusive and against public policy. What the parties attempted to do was to

provide by two agreements what they could not do in one agreement, and since they were executed contemporaneously and concern the same subject matter and since Exhibit 1 specifically refers to Exhibit A, we are compelled to hold that one contract resulted, which is indivisible, and under the foregoing rules, is unenforceable as contrary to public policy. The district court erred in its conclusion that the contract entered into between the parties was valid and legal and binding and that Della was barred from inheriting any property of the decedent's estate by reason thereof.

The judgment is reversed.